[No. 26531-8-I.   Division One.   August 19, 1991.]

KIMBERLY GAY GEORGE, ET AL, *Appellants*, v. ANDREW
GORDON HELLIAR, *Respondent.*

*David G. Porter, Catherine W. Smith,* and *Edwards, Sieh, Wiggins & Hathaway,* for appellant George.

*Karlene Weiland* and *Balas & Weiland,* as guardian ad litem.

*Andrew Gordon Helliar,* pro se.

COLEMAN, J. — Kimberly George, mother of Danielle Louise Helliar, and Karlene Weiland, guardian ad litem, appeal from the trial court's order modifying custody and establishing visitation rights. Kimberly also appeals the court's imposition of support obligations upon her. We reverse and remand for further proceedings.

On June 8, 1986, Kimberly gave birth to Danielle. Kimberly filed a paternity suit on April 10, 1987, and an order entered a year later declared Andrew Helliar, a resident of Surrey, British Columbia, to be Danielle's natural father. Through that order, the court awarded Kimberly "the care, custody, and control" of Danielle and obligated Andrew to pay monthly child support. Andrew was granted "reasonable rights of visitation."

For a time, Kimberly and Danielle lived in a house bought by Kimberly's parents, Jane and Bert Wight, with the expectation that Kimberly would make the mortgage payments. Long-standing difficulties in the relationship between Kimberly and her mother were exacerbated

when Kimberly was unable to make some of the payments. In January 1988 Kimberly moved out of the house and asked Jane to care for Danielle temporarily until Kimberly was settled elsewhere.

Within a week, Kimberly began living in her parents' home with Danielle because she was unable to find alternative housing. Jane arranged to take Danielle to a daycare center near her workplace while Kimberly sought work. That arrangement continued from January 1988 through mid-August 1988. During that period, Andrew had regular visitation with Danielle and sent regular monthly support payments.

In August 1988 Jane began having concerns that Kimberly had an alcohol problem because of her "antisocial behavior" and money shortages, so she contacted a counselor and began attending Alanon classes. When Jane confronted Kimberly with her concerns, Kimberly refused to talk with her and began living at a relative's house through December 1988 while Danielle remained with Jane and Bert.

When Andrew arrived at Jane's house for a scheduled visitation in August 1988, Jane told him that he should take Danielle to live with him and his common law wife, Lorrie, because of Jane's concerns about Kimberly. Consequently, Andrew took Danielle and her belongings to his home in British Columbia. The record indicates that Kimberly later made several attempts to retrieve Danielle from Andrew, but Andrew prevented Kimberly from taking Danielle back to Washington.

Kimberly filed an action in Canada to regain custody of Danielle. On August 28, 1989, before the suit in Canada was resolved, Andrew petitioned the Washington court to modify the original custody decree. In his petition, Andrew alleged that Kimberly's lifestyle made her unsuitable as a custodial parent and that her limited

contact with Danielle during the previous year justified a modification from the original custody decree.

In response, Kimberly denied all of Andrew's allegations and asserted that Andrew had prevented her from seeing Danielle. She also contended in her cross claim that Andrew willfully refused to return Danielle to her in violation of the original custody order and that Danielle had been abused while she was under Andrew's care. The court found that Andrew presented a prima facie case for modification and granted him temporary custody of Danielle. The court also granted Kimberly visitation rights.

During the subsequent 3-day trial, the parties and various family members testified extensively. Chris Parkes, a mental health counselor hired by Andrew, and Karlene Weiland, a court-appointed guardian ad litem, also testified. Because Parkes had not had the opportunity to interview Kimberly, she declined to make a custody recommendation but she spoke favorably about the parenting skills of Andrew and Lorrie. Weiland, however, recommended that Kimberly retain custody of Danielle.

The trial court concluded that because Danielle seemed to have adjusted well to Andrew's home environment, it was in the best interests of the child to establish Andrew as Danielle's primary caretaker subject to the provisions of the parenting plan. The pertinent portion of the court's findings is as follows:

> 5. The child is now integrated into the home of the father and appears from the evidence to be healthy, happy and secure. Because of the security that the child now enjoys and also due to the court's belief that the child appears to be interacting in a positive manner with both of her parents, it would be inappropriate to not allow the father to continue as the primary custodian of the child.

> 6. Accordingly, the child's best interests are met by allowing the child to remain in the home of her father and to disrupt the current order allowing the father to remain the primary custodian would pose a risk of harming the child's emotional or mental health.

An addendum to the decree was later entered which elaborated upon the parenting plan and effectively denied the motion for reconsideration filed by Kimberly and by Danielle's guardian ad litem. Kimberly and the guardian ad litem appeal.

We first consider whether the trial court erred by granting Andrew's petition to modify the original custody decree and awarding him custody of Danielle. Kimberly and the guardian ad litem assert that the court erred because it failed to find any substantial change in circumstances as required by RCW 26.09.260.[1]

■ The statutes and case law have established a strong presumption favoring custodial continuity because custodial modifications are highly disruptive to children. *In re Marriage of Thompson*, 32 Wn. App. 418, 421, 647 P.2d 1049 (1982); *In re Marriage of Roorda*, 25 Wn. App. 849, 851, 611 P.2d 794 (1980); *Anderson v. Anderson*, 14 Wn. App. 366, 368, 541 P.2d 996 (1975), *review denied*, 86 Wn.2d 1009 (1976). A court's preference for one parent over the other is not a basis for ordering a modification. *Anderson*, at 368. Rather, the party seeking a custody modification must demonstrate that a substantial change in circumstances has occurred that requires a modification to protect the best interests of the child. *Cf. Schuster*

---

[1] RCW 26.09.260(1) reads in pertinent part:

"(1) The court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

"(a) The parents agree to the modification;

"(b) The child has been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan; or

"(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." (This version of the statute incorporates both amendments made to RCW 26.09.260 in 1989. See Reviser's note following the statute.)

*v. Schuster*, 90 Wn.2d 626, 628-29, 585 P.2d 130 (1978); *Roorda*, at 851; *Groves v. Groves*, 173 Mont. 291, 567 P.2d 459, 463 (1977).

In determining whether a substantial change in circumstances has ·occurred to warrant modification, the trial court must look only at the circumstances of the child or the custodial parent and not those of the non-custodial parent. RCW 26.09.260(1); *cf. In re Marriage of Mangiola*, 46 Wn. App. 574, 578, 732 P.2d 163 (1987). Thus, a modification is permissible

> only when there is sufficient evidence to support a finding that: (1) there has been a change in circumstances, (2) the best interests of the child will be served, (3) the present environment is detrimental to the child's well-being, and (4) the harm caused by the change is outweighed by the advantage of the change.

*Anderson*, at 368 (citing RCW 26.09.260).[2]

■ In this case, it is apparent that the trial court relied upon the "integration" provision of RCW 26.09.260(1)(b) when it granted Andrew custody of Danielle. That subsection of the statute, however, requires a finding that the custodial parent consented to the child's integration into the noncustodial parent's household, and the trial court made no such finding. Moreover, there is no evidence in the record which would support such a finding.

■ ■ Likewise, the court made no finding as to whether the child's "present environment" was detrimental to her so that modification would be warranted under RCW 26.09.260(1)(c). By necessity, "present environment" in that context refers to the custodial environment named in the original custody decree. *Cf. Groves v. Groves*, 173 Mont. 291, 567 P.2d 459, 463 (1977). To conclude otherwise would improperly shift the burden of proof in modification proceedings to the nonmoving party, a result that clearly was not intended by the Legislature. *Cf. Schuster*, at 628-29; *Roorda*, at 851; *Groves*, 567 P.2d at 463. Given

---

[2]Recent amendments to RCW 26.09.260 have created additional bases for modifying custody orders since *Anderson* was written, but those changes are not pertinent to this case.

the absence of essential findings, Andrew failed to sustain his burden of showing that a substantial change of circumstances had occurred from the time the original custody decree was entered. *Taplett v. Khela*, 60 Wn. App. 751, 759, 807 P.2d 885 (1991) ("The absence of a finding on an issue is presumptively a negative finding against the person with the burden of proof.").

■ Further, Andrew's unilateral decision to take Danielle to live with him contravened the original custody decree, and nothing in the record suggests that such action was necessary for Danielle's protection while the child was under her grandmother's care. The fact that Andrew took no legal steps to modify the original custody decree for more than a year after taking Danielle to Canada further exacerbates the effects of his action. We cannot sanction a course of action in which a noncustodial parent violates the custody order by removing the child from the custodial parent's control and later asserts that the child's integration into the noncustodial parent's household justifies a modification of custody. This result would shift the burden in modification proceedings to the custodial parent named in the original decree to prove the fitness of the custodial home, contrary to the Legislature's intent. *Cf. Schuster*, at 628-29; *Roorda*, at 851; *Groves*, 567 P.2d at 463.

Accordingly, we reverse the trial court's order and remand for further proceedings consistent with this opinion.[3] In so holding, we are mindful that the circumstances of the parties may have changed between the entry of the trial court's order and the issuance of this opinion. *See In re Custody of Stell*, 56 Wn. App. 356, 371, 783 P.2d 615 (1989). Consequently, on remand, the trial court is to review Kimberly's current situation and conduct any hearings necessary to determine if she is presently a fit

---

[3]We note that the evidence before the trial court (including a recommendation from the guardian ad litem that Kimberly retain custody of Danielle) indicated that Kimberly was a fit parent when the order was entered, and no contrary finding was entered by the court.

parent capable of providing a suitable home for Danielle. We emphasize that the trial court is not to review de novo the original decree by comparing the circumstances of each parent's household. Instead, the court must focus solely on the suitability of Kimberly's present environment and must return Danielle to Kimberly unless the court makes findings that Kimberly is not a fit parent consistent with RCW 26.09.

Two additional issues were raised on appeal that need to be addressed only in the event that the trial court finds Kimberly to be an unfit parent on remand. First, Kimberly and the guardian ad litem have asserted that the trial court improperly deferred to the opinion of Chris Parkes, a mental health counselor, when it granted Kimberly visitation with Danielle on alternate weekends. The trial court noted that it would "defer to the recommendation of Chris Parkes, an expert who testified in this case and who is familiar with the child and the child's relationship with the parties[.]"

Trial courts are given broad discretion in matters concerning children. *In re Marriage of Cabalquinto*, 100 Wn.2d 325, 327, 669 P.2d 886 (1983). A reviewing court will not disturb a trial court's disposition of a case involving the rights of custody and visitation unless the trial court manifestly abused its discretion. *Cabalquinto*, at 327. The record indicates that Parkes was a certified mental health counselor with a master's degree who worked with children and family conflicts for more than 8 years. We find no error in the court's method of determining the visitation arrangements.

Finally, we consider the issue of child support. Assuming that the trial court finds that Kimberly should retain custody, the court must determine the amount of child support that Andrew should pay according to the child support schedule, including written findings of fact to support that determination. RCW 26.19.020(1)(a), (2). If, however, the court finds that Kimberly is not presently a fit parent and that custody should be awarded to Andrew,

then written findings of fact must be made pursuant to the schedule regarding the child support that Kimberly is capable of paying. The court erred by failing to make written findings regarding its support decision, contrary to the statutory requirements. RCW 26.19.020(2), (4).[4] Thus, we reverse the trial court's order and remand the case with instructions for further proceedings consistent with this opinion.

FORREST and BAKER, JJ., concur.

---

[4]"An order for child support shall be supported by written findings of fact upon which the support determination is based." RCW 26.19.020(2). "Worksheets in the form approved by the commission shall be completed and filed in every proceeding in which child support is determined. Variations of the worksheets shall not be accepted." RCW 26.19.020(4).