IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>ALEXI MIKELE TURNER,<br><br>               Respondent,<br><br>and<br><br>MICHAEL MATTHEW TURNER,<br><br>               Appellant. | No. 84402-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Michael Turner appeals from an order that modified a parenting plan and ordered the parties' daughter to attend public school. Because the court did not abuse its discretion, we affirm.

FACTS

Michael and Alexi Turner[1] have one daughter, H, who was born in October 2015. The couple divorced in 2017. The parenting plan entered at that time provided that when H started kindergarten, she would primarily reside with Alexi, but, until then, she would spend equal time with each parent on a schedule of alternating weeks. Michael and Alexi changed the parenting plan in 2020 by agreement, and provided that H would continue the alternating schedule even after she reached school age. The parenting plan did not expressly describe the mode of H's education upon reaching school age, but did set out that education

---

[1] Because the parties share a last name, we refer to them by their first names for clarity. No disrespect is intended.

decisions were to be made jointly by the parents. The parenting plan also provided a method for dispute resolution if the parents could not agree on schooling.

The parents each had a sincere, but incorrect belief about the other's intentions in creating the 2020 modified parenting plan. Alexi believed Michael was agreeing to move from Kitsap County to King County, while Michael believed Alexi was agreeing to homeschool H. Under either of those scenarios, the alternating residential schedule would have been compatible with H's education. Once the miscommunication was discovered, the parties attempted to resolve the disagreement through mediation, an informal phone conversation, and a second mediation session. These efforts were ultimately unsuccessful, and Alexi moved to modify the parenting plan. She requested that the court resolve the education dispute by ordering H attend her local public school and to modify the residential schedule contained in the 2020 parenting plan to place H with Alexi for the majority of the time during the school year. Michael opposed the petition.

In September 2021, a commissioner found there was adequate cause for modification. Michael moved for revision of the adequate cause determination. A judge granted the revision in part and issued a temporary order that continued the schedule of alternating weeks provided that "during their residential time the parent shall reside with the child in a location that is no more than 20 miles from [the] elementary [school]."

The parties proceeded to trial on the modification on May 16, 2022. The court heard testimony from both parents and Dr. Brian Ray, Michael's expert

witness on home-based education. After trial, the court found there had been a substantial change in the child's situation, the current living situation was detrimental to her, and that the best interests of the child supported a modification. The court ordered that H attend the elementary Alexi requested, and changed the residential schedule such that H would reside with Alexi the majority of the time and with Michael three weekends per month during the school year, and with each parent equally on a weekly alternating basis during the summer. Michael timely appealed.

## ANALYSIS

This court generally reviews trial court decisions related to a parenting plan for an abuse of discretion. In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). This court also reviews "a trial court's rulings dealing with the provisions of a parenting plan" for abuse of discretion. In re Marriage of Christel, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000). If a trial court's decision is "based on untenable grounds or untenable reasons," it abuses its discretion. Halls, 126 Wn. App. at 606. Likewise, a court abuses its discretion if it "fails to follow the statutory procedures or modifies a parenting plan for reasons other than the statutory criteria," or if its "decision is outside the range of acceptable choices" based on the law and facts. Id. This court will uphold the trial court's findings of fact so long as they are supported by substantial evidence. In re Marriage of Hansen, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" In re Marriage of DeVogel, 22 Wn. App.

2d 39, 48, 509 P.3d 832 (2022) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). We may affirm the trial court "on any basis supported by the record." In re Marriage of Raskob, 183 Wn. App. 503, 514-15, 334 P.3d 30 (2014). With this standard of review in mind, we turn to the assignments of error.

I.      Substantial Evidence and Expert Testimony

Michael argues that the trial court abused its discretion because its factual findings are unsupported by substantial evidence and are contrary to unrebutted expert testimony. Again, we review a trial court's findings of fact for substantial evidence to "'determine only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict.'" DeVogel, 22 Wn. App. 2d at 48 (quoting Thomas v. Ruddell Lease-Sales, Inc., 43 Wn. App. 208, 212, 716 P.2d 911 (1986)).

First, Michael contends the court erred in making findings contrary to his expert's unrebutted testimony. "'[T]rial courts should rely on expert opinion to help reach an objective, rather than subjective, evaluation of the issue.'" In re Custody of Stell, 56 Wn. App. 356, 368, 783 P.2d 615 (1989) (quoting In re Marriage of Woffinden, 33 Wn. App. 326, 330-31 n.3, 654 P.2d 1219 (1982)). However, "the trial court is free to reach its own conclusions from the testimony before it." Id. Further, "[t]he factfinder is given wide latitude in the weight to give expert opinion," and, as an appellate court, we do not reweigh expert testimony. In re Marriage of Sedlock, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993). "A trial court has the right to reject expert testimony in whole or in part in accordance

with its views as to the persuasive character of that evidence." Brewer v. Copeland, 86 Wn.2d 58, 74, 542 P.2d 445 (1975).

Here, while Ray's opinions were unrebutted, the court clearly stated the reasons it found his testimony unpersuasive. The court disagreed with Ray's analysis that H would receive adequate education with only one parent conducting home-based instruction during their residential time. The court found it critical that Michael, separately or through Ray, failed to offer or cite studies "or any information presented for split households," where only one caregiver was providing home-based education. This is sufficient to support the court's rejection of Ray's opinion that home-based education could be successful for H even if instruction was only provided by Michael during his residential time with her.

Next, the trial court's finding that home-based instruction by Michael during his weeks with H would be insufficient and its finding that H's underperformance in public school was due to inadequate home education are both supported by substantial evidence. Ray admitted that comparing results from the Peabody assessment[2] to grades from a traditional public school setting "is ill-advised," and grounded his conclusion in his belief that results from a test like the Peabody are the result of a "nationally normed, standardized, valid and reliable instrument," as opposed to the assessment of an individual teacher, which he suggested may be more inherently subjective. The court further asked Ray if he could explain why H, if she had been performing at a first-grade level

_____

[2] The Peabody assessment is a standardized test used to measure academic achievement for education.

according to the Peabody assessment, and had completed a year of kindergarten-level homeschooling, would perform "in the middle of the pack" in her subsequent public school kindergarten setting. Ray hypothesized that H may have been bored or was not as engaged in a public school setting. The court asked Ray about reading performance, specifically, and questioned whether reading is an "objective type of standard, if you read at a certain level, you would maintain that reading, whether you're bored or not?" Ray responded that, in theory, H "should at least maintain" her reading level, but stated only that it "really makes us question a lot of what's happening there," and that there was "a problem." Ray offered no further analysis or opinion on that issue. The court relied on reading performance as "a constant," objective standard in finding that H was not adequately educated at home. The testimony by Ray, H's grades from public school, and her Peabody assessment scores are sufficient to support the trial court's findings. As an appellate court, we do not reweigh such evidence or resolve conflicting evidence. DeVogel, 22 Wn. App. 2d at 48. The court's findings are supported by substantial evidence, and the court provided reasoning for rejecting portions of Ray's testimony. Accordingly, it did not abuse its discretion.

II.     Trial Court's Dispute Resolution Authority

Michael also contends that, to the extent it was exercising its authority to resolve the dispute over H's education, the trial court abused its discretion by applying an incorrect legal standard. He argues the court failed to give

preference to the existing parenting plan, entered in 2020, and failed to consider which schooling option would best carry out that parenting plan.

Michael correctly concedes that the trial court had the authority to resolve the parties' dispute over H's schooling. A trial court has statutory authority to "clarify a decree by defining the parties' respective rights and obligations, if the parties cannot agree on the meaning of a particular provision." Christel, 101 Wn. App. at 22. A trial court also has authority to resolve disputes under RCW 26.09.184(4). Parenting plans must contain a "process for resolving disputes," outside of judicial proceedings. RCW 26.09.184(4). However, "parties have the right of review from the dispute resolution process to the superior court." RCW 26.09.184(4)(e). "The ultimate responsibility for overseeing the performance of the parenting plan remains with the court." In re Parentage of Smith-Bartlett, 95 Wn. App. 633, 640, 976 P.2d 173 (1999). In resolving disputes, either through a court action or in a process outside of a court action, "[p]reference shall be given to carrying out the parenting plan." RCW 26.09.184(4)(a).

In addition to its statutory authority, the trial court also had explicit authority to resolve the dispute about H's education under the parties' agreed July 2020 parenting plan. The plan specifically provides that, "[t]he child shall attend the school mutually agreed upon by the parents," and if "the parents cannot agree on the selection of a school, the child shall be maintained in the present school, pending mediation or court decision as specified above." Critically, this agreed plan was also based on a fundamental misunderstanding by the parties. The testimony at trial established that each parent had a genuine,

but incorrect belief about the intention of the agreed plan and corresponding actions of the other parent. Alexi agreed to enter the 2020 parenting plan based on the belief that Michael was going to relocate to King County once H reached school age. Michael entered into the plan based on the belief that Alexi concurred H should be homeschooled.

Michael contends the court failed to make any findings or conduct any analysis that demonstrated a preference for the current parenting plan and, thus, misapplied the law, an abuse of discretion. He alleges that there is no analysis in the record which demonstrates that the trial court considered which schooling option would best fit the existing parenting plan. This contention is not supported by the record. In its oral ruling, the court made numerous findings that homeschooling would not be feasible, would not adequately educate H, and would not be in H's best interests. The court was concerned that H was not performing as expected based on her homeschooling testing scores and subsequent grades in public school. The court also found that "the underpinning is consistency in home education-based models. It requires a buy-in of the people that are the caregivers for the child." The court further found that the father's approach to home-based education "did not result in the kinds of grades that this [c]ourt would have expected this child to have on an objective scale" and, as such, it was in H's best interests to attend public school as Alexi requested. This reasoning, unrelated to the parties' residential schedule, supports the court's finding that a public school environment was in H's best interest. The court properly understood, based on the procedural posture

presented by Alexi's petition after mediation had failed, that resolving this issue would determine the next step in the legal proceedings with regard to a ruling to grant or deny modification.

While RCW 26.09.184(4)(a) mandates that "[p]reference shall be given to carrying out the parenting plan," it does not require that the parenting plan be followed in all circumstances. This aligns with the "broad discretion" given to a trial court's decisions because of its "unique opportunity to observe the parties to determine their credibility and to sort out conflicting evidence." In re Marriage of Woffinden, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982). Michael relies on Smith-Bartlett for the contention that, in resolving a dispute, "the trial court must 'listen to the parties and decide who should prevail in light of the parenting plan.'"[3] However, the court's schooling decision here was not contrary to the parenting plan: it found that a home-based education model would not be feasible based on the parents' respective professional obligations and that it would not provide adequate education for H. This is consistent with Smith-Bartlett and is contrary to Michael's assertion in his brief that the court based its decision on an "assumption that [H] should attend a brick-and-mortar school."

The court's findings establish that the court properly demonstrated a preference for the current parenting plan and followed the statutory procedure.

---

[3] Appellant's Br. at 32 (quoting Smith-Bartlett, 95 Wn. App. at 642). For the sake of clarity, it should be noted that the quoted language from Smith-Bartlett refers to the unique procedural posture of that case, which involved "a de novo review of [an] arbitration." 95 Wn. App. at 641. The full quote read, "The only way for the court to review the arbitrator's decision, therefore, is to listen to the parties and decide who should prevail in light of the parenting plan. This is a review de novo." Id. at 642.

The court did not abuse its discretion as to its resolution of the parties' dispute over H's education.

III.     Modification of Residential Schedule

After addressing the dispute over education, the court acted within its discretion when it progressed to the next step and considered the residential schedule pursuant to Alexi's petition to modify the parenting plan.  Again, we may affirm the trial court "on any basis supported by the record."  Raskob, 183 Wn. App. at 514-15.

Michael assigns error to the court's decision to modify the parenting plan by changing the residential schedule.  He argues that the trial court's modification was contrary to law because its decision does not meet the elements required by RCW 26.09.260.  Specifically, he contends the trial court erred in finding that: there had been a substantial change in circumstances, the residential schedule set out in the 2020 plan was not feasible, and the child's present living situation was harmful.  Finally, Michael avers that the trial court erred in failing to consider the RCW 26.09.187 factors in creating the modified residential schedule.  We address each argument in turn.

Washington courts apply "'a strong presumption in favor of custodial continuity and against modification'" as changes in residential time are "'viewed as highly disruptive to children.'"  In re Marriage of Taddeo-Smith, 127 Wn. App. 400, 404, 110 P.3d 1192 (2005) (quoting In re Marriage of Shryock, 76 Wn. App. 848, 850, 888 P.2d 750 (1995)).  Under RCW 26.09.260(1), a court:

shall not modify a prior custody decree or parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.

A court may modify the residential schedule in a parenting plan if, in addition to finding there has been a substantial change in circumstances, "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c).

A.      Substantial Change in Circumstances

After it resolved the question of H's education and ordered that she attend her local public elementary school pursuant to its dispute resolution authority, the court properly found that there was a substantial change in circumstances such that modification was warranted. As H was now required to attend public school, the court found the current residential schedule was not feasible[4] or in H's best interests, as it would either require her to make a significant commute from Michael's home to school and back during the weeks she would reside with him or it would require Michael's relocation. There is sufficient evidence to support the court's finding of a substantial change in circumstances and it did not abuse its discretion as to this determination.

_____

[4] While Michael assigns error to the court's finding that the current residential schedule was "impractical and not workable" or "not feasible," he provides no substantive argument on this assignment of error. Accordingly, we decline to reach it. See RAP 10.3(a)(6) (party must provide argument on issues presented); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

- 11 -

B.     Detrimental Present Environment

Michael further contends the trial court erred because there was no evidence that H's present environment was detrimental.  A trial court may make a major modification to a parenting plan if "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health." RCW 26.09.260(2)(c).  In evaluating the child's environment, the court considers the present "custodial environment named in the original custody decree." George v. Helliar, 62 Wn. App. 378, 383, 814 P.2d 238 (1991).  The court looks to "the circumstances of the parties as they exist at the time of trial."  In re Marriage of Littlefield, 133 Wn.2d 39, 56, 940 P.2d 1362 (1997).  "In a joint custody situation," courts consider the "'joint custodial environment' and whether changed circumstances have rendered joint custody unworkable and detrimental."  In re Marriage of Stern, 57 Wn. App. 707, 715, 789 P.2d 807 (1990).

Michael avers that the trial court erred by looking to a hypothetical future situation rather than the present circumstances.  However, as discussed herein, the trial court properly considered the substantial change stemming from the education dispute and the court-ordered resolution.  At trial, Alexi testified that the distance between Michael's home in Kitsap County and King County was approximately 50 miles each way.  Alexi also testified that in her prior experience commuting from Kitsap County to King County, it was "hard on your body. Hard on your car."  In its oral ruling, the court found that "it was not feasible to have [H] commute from such long distances between these homes" in order to attend

- 12 -

school in north King County. There is sufficient evidence to support the court's finding that H's present environment, in light of her transition into public school, was detrimental; the court did not abuse its discretion under these facts.

###### C. Permanent Parenting Plan Factors

Michael next avers that the trial court failed to consider all required statutory factors in making its decision to modify the parenting plan. He asserts that because modification must be necessary to serve the best interests of the child, and because a parenting plan entered on a "decree of modification" is a permanent parenting plan, the trial court must consider the factors described in RCW 26.09.187(3)(a). However, in drilling down on Michael's argument, the only factor he alleges the court failed to analyze is H's connections with the Kitsap community and activities there. Michael is incorrect in that regard. Our state Supreme Court has held that:

> [a] trial court making an initial placement of the child considers many factors that impact the child's life in order to determine the best interests of the child. See RCW 26.09.187(3). A trial court hearing a modification action, on the other hand, presumes the best interests of the child require the primary placement remain intact.

In re Marriage of Pape, 139 Wn.2d 694, 715, 989 P.2d 1120 (1999). This clearly establishes a distinction between the statutory factors that must be considered when a court is fashioning an initial parenting plan, and the process for when a court is considering a petition for modification. This interpretation is further bolstered by the fact that several unpublished opinions by the Court of Appeals have concluded RCW 26.09.187 factors are inapplicable in an action to modify

an existing parenting plan.[5] See, e.g., In re Marriage of Carpenter, No. 36766-5-III, slip op. at 4-5 n.1 (Wash. Ct. App. July 23, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/367665_unp.pdf ("Ms. Carpenter focuses on standards relevant to an initial parenting plan decision in RCW 26.09.187, not those for a motion to modify an existing plan."); In re Marriage of Hardin, No. 48987-2-II, slip op. at 19 (Wash. Ct. App. Apr. 17, 2018) (unpublished), courts.wa.gov/opinions(pdf/D2%2048987-2-II%20Unpublished%20Opinion.pdf (holding the court did not err because, although it "referenced the statutory factors under RCW 26.09.187 at the modification hearing, the court clarified that the case would be resolved under RCW 26.09.260"); In re Marriage of Monoskie, No. 35067-3-III, slip op. at 6 (Wash. Ct. App. Nov. 30, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/350673_unp.pdf (establishing, where the youngest child did not have a primary residential parent, "the trial court's analysis fell under RCW 26.09.187(3) (governing initial placements) as opposed to RCW 26.09.260 (governing modifications)"). The trial court here properly found that the modification would be in H's best interests. It applied the correct statutory framework and, as such, did not abuse its discretion.

The trial court's findings of fact are supported by substantial evidence and it correctly applied the law to the parties' dispute which involved interconnected issues of education and residential time, within the layered framework of dispute

---

[5] Under GR 14.1(a), "[u]npublished opinions of the Court of Appeals have no precedential value and are not binding upon any court," though they "may be accorded such persuasive value as the court deems appropriate." We reference the subsequent unpublished opinions as examples of this court distinguishing the statutory framework of an initial parenting plan and a modification.

resolution and a petition for modification. It did not abuse its discretion in doing so and we affirm.[6]

 

 

_____

WE CONCUR:

_____          _____

---

[6] Michael also assigns error to the adequate cause determination that preceded the trial on modification. Because we conclude the trial court did not abuse its discretion in modifying the parenting plan, the ruling on adequate cause is moot and we decline to reach this assignment of error. See In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (appellate courts will not review a moot case).