[No. 13995-2-II.   Division Two.   August 17, 1992.]

*In the Matter of the Marriage of* ROBERT ALLEN
AMBROSE, *Respondent, and* ROBIN LYNN
AMBROSE, *Appellant.*

*John L. Meader* and *Meader & Devlaeminck,* for appellant.

*Todd H. Hutchinson,* for respondent.

ALEXANDER, J. — Robin Lynn Ambrose appeals an order of the Clark County Superior Court granting permanent custody of her three children to her ex-husband, Robert Ambrose. She assigns error to the trial court's conclusion that the term "child's present environment" referred to the time when Robert filed a motion for modification rather than time of trial. We reverse and remand.

Robin and Robert Ambrose were married on September 11, 1971. Three children, Geoffrey, Eric, and Lindsay were born to Robin and Robert. In 1988, the Clark County Superior Court entered a decree dissolving their marriage. Robin was made the "primary residential custodial parent" of the three minor children.

On January 6, 1989, Robert filed a motion in Clark County Superior Court for a temporary change of custody of the three children. At that time the children lived with Robin at the Fort Vancouver Terrace Apartments in Vancouver, Washington. On February 17, 1989, Robert was awarded temporary custody of the children for 14 days, based on the trial court's finding that Robin was incarcerated and "other factors". The children were removed from Robin's custody on that date and since that time they have not resided with her, other than on visitations.

On March 3, 1989, the trial court, after a hearing, extended its order granting Robert temporary custody until "further ordered". On that same date, Robert sought permanent custody of the children by filing a "motion to modify decree of dissolution as to custody/placement". Approximately 9 months later, after 4 days of trial,[1] the trial court

---

[1] Due to the trial court's schedule and the schedules of counsel and the parties, the trial was conducted on four separate dates, to wit: August 4, 1989; October 2, 1989; January 3, 1990; and January 24, 1990.

indicated in open court that it would grant Robert Ambrose's motion and award permanent residential care and custody of all three children to him. On May 11, 1990, it entered a written order consistent with its oral decision. In its order modifying the dissolution decree, the trial court made the following finding of fact:

> The Court finds that *the Fort Vancouver Terrace Apartments were the childrens'* [sic] *"present environment" for purposes of RCW 26.09.260.* The interests of the children during that time were secondary to the interests of the Respondent [Robin Ambrose] and her house guests. The Court finds that the present environment at that time and place were detrimental to the physical well being of the three children. The Court cannot find that the youngest child had been sexually abused. Further, the Court finds that both parents and all three children are better off in each of their present respective living situations in that the children are stablized [sic] and are maturing and improving in the structured environment with the Petitioner, and that the Respondent has had a chance to stablize [sic] her life, seek alcohol-abuse treatment, and become steadily employed. . . .

(Italics ours.) From that finding, the trial court concluded:

> as a matter of law that *the Respondent's present environment at the time of the filing of the Petition for Modification of the Decree of Dissolution was detrimental* to the children's physical, mental, or emotional health, and that the harm likely to be caused by a permanent change of environment is outweighed by the advantage of such a change to the children.

(Italics ours.)

Robin has not assigned error to any of the trial court's findings and, therefore, they are verities on appeal. *In re Marriage of Elam*, 97 Wn.2d 811, 817, 650 P.2d 213 (1982). She argues only that the trial court committed an error of law in construing the statutory term "child's present environment" to mean the environment the children were in at the Fort Vancouver Terrace Apartments "at the time of the filing of the petition for Modification of Decree of Dissolution."[2]

---

[2]We are assuming that when the trial court granted a permanent change of custody it focused on the children's present environment at the time Robert Ambrose filed his "motion" for a temporary change of custody. Robert Ambrose never filed a "petition" for modification of custody, his pleading being entitled a "motion". Furthermore, as noted above, the children never resided at the Fort

The term "child's present environment" appears in RCW 26.09.260. That statute provides, in part, as follows:

> (1) Except as otherwise provided . . . the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child . . ..
>
> (2) In applying these standards, *the court shall retain the residential schedule established by the decree or parenting plan unless*:
>
> . . . .
>
> (c) *The child's present environment is detrimental to the child's physical, mental, or emotional health* and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child; . . .[.]

(Italics ours.)

■ The central issue in the case is whether the trial court correctly concluded that the children's "present environment", as that term is used in the statute, was their environment at the time Robert began his action to obtain custody. Because the term "child's present environment" is not defined in the statute, we must attempt to ascertain its meaning. Interpreting the meaning of a statute is a question of law. *Glacier Springs Property Owners Ass'n v. Glacier Springs Enters., Inc.*, 41 Wn. App. 829, 832, 706 P.2d 652, *review denied*, 105 Wn.2d 1002 (1985). The trial court's holding on a question of law is reviewed de novo. *Hoffer v. State,*

---

Vancouver Terrace Apartments after February 17, 1989, the date an order was entered granting Robert's motion for temporary custody. In granting Robert Ambrose's motion for a permanent change of custody, the trial court said:

> I disagree with John Meader [counsel for Robin Ambrose] as far as the interpretation of the statute is concerned but I do not disagree with him that I think the statute contemplates that these matters will be finished sooner. I [*sic*] talks about I must look out for the best interests of the child and then I must determine if the child's present environment is detrimental to the child's physical, mental or emotional health. That was Robin's environment until such time as the temporary order was ordered. That is the present environment that I'm looking at, and I don't feel that there's any question that that environment at that point and even Robin admitted was not the most suitable — some of it may be due to the fact that she was living in Fort Vancouver Terrace and some of that may be attributable to the fact that Bob was not paying support.

110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989).

In ascertaining the meaning of a term in a statute, we must first consider the usual and ordinary meaning of the term and the context in which it is used in the statute, as well as the legislative purpose that underlies the statute. *See PUD 1 v. WPPSS*, 104 Wn.2d 353, 369, 705 P.2d 1195 (1985). In our judgment, the key word in the phrase "child's present environment" is the word "present". The dictionary definitions of that term are numerous but consistent. For example, the term is defined as: "now existing or in progress : begun but not ended : now being in view, being dealt with, or being under consideration : being at this time : not past or future : . . .". *Webster's Third New International Dictionary* 1793 (1969). These meanings would strongly suggest that the children's present environment is to be determined presently, at the time the custody decision is being made, and not as of some earlier time.

Furthermore, common sense suggests that the usual and ordinary meaning of the term "child's present environment", when it is viewed in the context of a statute relating to modification of a custody decree or parenting plan, is the environment that is being provided to a child by the residential child's parent or custodian, contemporaneously with the trial court's consideration of the matter. We reach this conclusion because this court must construe a statute in such a way as to make it purposeful and effective. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The purpose of RCW 26.09.260, when it is viewed as a part of the entire chapter on dissolution of marriage, is to promote stability for children and ensure that "existing pattern[s] of interaction between a parent and child" are changed only to the extent necessary "to protect the child from physical, mental, or emotional harm." RCW 26.09.002. RCW 26.09.260 sets forth the factors that a court must consider before a modification of a prior custody decree or parenting plan may be ordered. These factors limit the instances when such a change may be allowed. *See*

*In re Rankin*, 76 Wn.2d 533, 536-37, 458 P.2d 176 (1969). Here, the only pertinent factor is found in RCW 26.09-.260(2)(c), which provides that the residential custodian provided for in the decree shall not be changed unless the child's present environment is detrimental to that child's physical, mental or emotional health. Interpreting the term "child's present environment" to mean the environment that the residential parent or custodian is currently providing or is capable of providing for the child gives purpose and effect to the statute. This statutory term requires a court to consider all relevant evidence about the custodial parent's performance as a parent, before it modifies a prior custody decree or parenting plan.

Furthermore, such an interpretation will be meaningful in situations in which children are residing with their residential parent or custodian at the time the modification petition is heard as well as situations, like this one, where the children have been temporarily removed from the custodial parent's residence pending a final hearing on the petition to modify custody.

An examination of the trial court's findings and conclusions reveals that the trial court determined that the term "child's present environment" was fixed at the time Robert filed his petition for temporary change of custody, that being a date approximately 2 weeks before the date the children last lived with their mother, but 9 months before the last evidentiary hearing in the trial court. While evidence regarding Robin Ambrose's situation at or about the time the children were removed from her residence was certainly relevant on the question of the children's present environment, evidence regarding her circumstances at or about the time of trial was also probative on that issue. It is for the trier of fact to determine the relative weight of such evidence.

In most cases, the time between the trial court's order granting a temporary change of residence of custody and its final order modifying the decree will not be great. In those situations, the issue we have dealt with in this opinion will not likely present itself. However, in those cases where circumstances cause the time between the hearings to be

lengthy, the need to look at the current circumstances of both parents is compelling.

We find support for our position in a recent decision from Division One of this court. In *George v. Helliar*, 62 Wn. App. 378, 814 P.2d 238 (1991), a father petitioned to change custody of his child from the mother to the father and the trial court granted the petition. Division One reversed and remanded the case for trial, in part because there was no factual finding that the child's present environment was detrimental to the child. *George*, 62 Wn. App. at 386. Regarding the "child's present environment", the court said:

> [O]n remand, the trial court is to review [the mother's] *current situation* and conduct any hearings necessary to determine if she is *presently a fit parent capable of providing a suitable home* for [the child]. . . . [T]he court must focus solely on the suitability of [the mother's] present environment and must return [the child] to [the mother] unless the court makes findings that [the mother] is not a fit parent consistent with RCW 26.09.

(Italics ours.) *George*, 62 Wn. App. at 384-85.

We do not mean to suggest by our holding here that the trial court may not consider the children's environment while they were in Robin's custody prior to the entry of the temporary order. We are simply saying that the trial court must consider any and all relevant evidence to determine if Robin is presently a fit parent capable of providing a suitable home for the children.[3]

Robin has requested attorney's fees on the basis of financial need pursuant to the provisions of RCW 26.09.140.[4] A

---

[3]Interestingly, the trial court had this to say about Robin Ambrose's situation at time of trial: "I do not at this point find that there's anything negative about Robin's situation. Robin is working, she's been working for the last eight months. I would believe her when she testifies that she hasn't had a drink since February 17th, 1989.
"******
"So the original environment was not good, present environment of Robert and Cheral is good, I cannot say that the present environment of Robin is bad."

[4]RCW 26.09.140 provides in part:
"The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other

party requesting attorney's fees on the basis of need must "file a financial affidavit no later than 10 days prior to the time set for oral argument". RAP 18.1(c). Robin has timely filed a financial affidavit of need and has demonstrated such need. Robert Ambrose has not contravened her affidavit.[5] Because Robin has demonstrated a need she is entitled to an award of reasonable attorney's fees. *In re Marriage of Sanborn*, 55 Wn. App. 124, 131, 777 P.2d 4 (1989). The fees will be determined in accordance with RAP 18.1(f).

The decision of the trial court is reversed and the case is remanded to the trial court for supplemental findings and determination, with or without further hearing, as the trial court deems appropriate.

MORGAN, A.C.J., and SEINFELD, J., concur.

party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment."

[5]Robert Ambrose requested fees in his brief as well, but he failed to comply with RAP 18.1.