# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ABDIMALIK HASSAN, | ) | No. 73615-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| NASRO ABUBAKAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: December 27, 2016 |

MANN, J. — This case concerns the modification of a parenting plan for the eight

children of Abdimalik Hassan and Nasro Abubakar. The original parenting plan, entered

after the couple's divorce in 2012, awarded primary custody of the children to their

mother, Abubakar. In September 2013, after an allegation of rape of one of the minor

children by Abubakar's adult son, the Department of Social and Health Services (DSHS)

began dependency proceedings against Abubakar. At the same time, Hassan filed a

petition to modify the parenting plan and child support order. After trial, the trial court

modified the parenting plan, awarding primary custody of the minor children to Hassan.

Abubakar appeals the court's modification order and its child support order. Because

the trial court acted within its discretion and the decision is supported by substantial evidence, we affirm both orders.

## FACTS

Nasro Abubakar and Abdimalik Hassan married in 1995 in Somalia. They immigrated to the United States in 2004. Abubakar and Hassan have eight children together. Abubakar also has an older adult son from a previous relationship.

Abubakar and Hassan divorced in January 2012. The final parenting plan order awarded primary custody of the eight children, at that time between two and sixteen years old, to Abubakar and allowed Hassan only restricted visitation based on allegations of domestic violence by Hassan.

Based on an allegation that Abubakar's adult son Keize raped Hassan and Abubakar's 11-year-old daughter while in Abubakar's care, on September 16, 2013, DSHS Child Protective Services (CPS) recommended that their daughter be placed full time with Hassan. That same day, Hassan filed a petition to modify the original parenting plan. Hassan filed an amended petition in April 2012.

Subsequent to Hassan's amended petition for modification, CPS removed all of the minor children from Abubakar's household and placed them with Hassan. Prior to the modification trial, dependency petitions were filed for each minor child. Abubakar was appointed counsel in the dependency cases.

The modification trial was originally set for August 18, 2014, but after the trial court learned of the related dependency proceedings, the trial date was continued to February 2015 so that the dependency proceedings could be concluded. The trial court

considered consolidation of the dependency and modification cases, but elected not to do so.

The dependency cases were referenced multiple times before and during the modification trial. For example, in a pretrial conference defense counsel explained the parallel dependency case to the court:

> [HASSAN'S COUNSEL]: There is a parallel dependency that's continuing up at juvenile court. And they are simply waiting on the resolution of this matter in order for them to make a decision about what to do with the dependency.
> THE COURT: I see. So one of us has to get to resolution, is that right?
> [HASSAN'S COUNSEL]: I believe, I believe we're the party.
> THE COURT: All right.

During trial, Hassan's counsel stated that "The Dependency Court, for better or for worse, has kicked the can to us to see if we can adjudicate and figure it out." Saeed Hashemi, the DSHS social worker assigned to the five youngest children confirmed in his testimony that hypothetically, if Hassan's petition was granted and he was awarded primary custody of the children with Abubakar as the non-custodial parent, DSHS would dismiss the dependency proceedings.

Hassan called four witnesses at trial: (1) Brian Walton, DSHS social worker assigned to two of the children; (2) Saeed Hashemi, DSHS social worker assigned to the five youngest ; (3) Joan Freeman, the guardian ad litem in the dependency proceeding; and (4) Abubakar.

Abubakar appeared *pro se* for the modification trial and struggled to cross-examine each witness. She also unsuccessfully tried to have her own witnesses testify telephonically.

After trial, the court issued the following findings:

The Department of Social and Health Services (DSHS) along with the assigned CASA for the children, support the father as a replacement for these children as the mother is no longer able to ensure the health, safety and welfare of the children.

It appears as though the mother may have some mental health deficiencies which interfere with her ability to safely parent these children. There are five "founded" findings made by DSHS as to the mother: 2 for physical abuse of the children and 3 for neglect. There are no findings as to the father. The Court found the testimony of Brian Walton (DSHS Social Worker); Joan Freeman (Dependency GAL); and Saeed Hashemi (DSHS Social Worker) to be credible and incorporates herein the facts as outlined in Ms. Freeman's report.

The father provides a safe and stable home that ensures the best interest of the children is met on a consistent basis. Additionally, it is significant that the father has been receptive to the family preservation services which have been provided. He has taken advantage of all of the in-home services which have been offered to the family. The mother has not been open to the same services and appears resistant to work with DSHS.[1]

Based on these findings, the trial court approved modification of the parenting plan. The final modification order placed the five younger children with Hassan, but allowed the two eldest children to choose whether to live with Abubakar or Hassan. The trial court also entered a child support order that required Abubakar to pay Hassan $188.47 per month for each of the five younger children and $100.00 for the older children.

Abubakar subsequently moved for a new trial supported by her declaration and letters from professionals supporting her. The trial court denied the motion for a new trial. Abubakar appealed.

---

[1] Clerk's Papers (CP) at 298-99.

<u>ANALYSIS</u>

I.

Abubakar first assigns error to the trial court's failure to appoint counsel in the modification proceeding. She contends that the right to counsel in the dependency proceeding transfers to the modification proceedings because the two proceedings were "inextricably linked." We disagree.

Whether the trial court erred by failing to appoint counsel for Abubakar depends on whether the court had the power to appoint her counsel. This is a question of law. We review pure questions of law de novo. <u>Town of Woodway v. Snohomish Cty.</u>, 180 Wn.2d 165, 172, 322 P.3d 1219 (2014).

A.

We must first address whether Abubakar properly preserved this issue for appeal. RAP 2.5(a) allows an appellate court to refuse to review any claim of error which was not raised in the trial court. Abubakar did not request court appointed counsel before or during trial. After the trial court issued the modification order, Abubakar moved for a new trial. Her motion was based, in part, on the opportunity to retain counsel. While not specifically a request for court appointed counsel, we will address Abubakar's assigned error.

B.

RCW 13.34.090 grants the right to counsel for parties in a dependency proceeding. Abubakar argues that she had a right to counsel in the modification proceeding because of that proceeding's link with the parallel dependency proceeding. This is true, Abubakar reasons, because the modification proceeding served as the fact-

finding portion of the dependency proceeding, the modification proceeding was transformed into a proceeding under chapter 13.34 RCW.

The record before us does not support Abubakar's argument that the juvenile court was relying on the modification proceeding for fact finding. While Hassan's counsel stated that the juvenile court was waiting on resolution of the modification proceeding, the testimony from DSHS social worker Hashemi indicated that DSHS would likely dismiss the dependence proceeding against Abubakar if Hassan was granted primary custody. DSHS's decision to dismiss the dependency is not the same as the juvenile court relying on the modification proceedings for fact finding.

Further, chapter 13.34 RCW governs dependency issues and the termination of the parent-child relationship. RCW 13.34.090 provides the right to counsel for any party in any proceeding under the chapter. RCW 13.34.090(1), (2). But chapter 13.34 RCW does not govern modification proceedings. Parenting plan modifications are governed by chapter 26.09 RCW. See RCW 26.09.260. Unlike chapter 13.34 RCW, chapter 26.09 RCW does not provide a right to counsel.

While the right to counsel provided by RCW 13.34.090 can extend to nondependency proceedings, unfortunately, it is not automatic or required. Instead, this only occurs when the juvenile court adjudicating a dependency proceeding grants concurrent jurisdiction to the family court to decide a stage of the proceeding in which the child is alleged to be dependent. For example, in In re Dependency of E.H., 158 Wn. App. 757, 243, P.3d 160 (2010), Division Two of this court held that indigent parents had a right to appointed counsel under RCW 13.34.090(2) where the juvenile court granted concurrent jurisdiction to the family court to decide a nonparental-custody

action that was "inextricably linked" to a dependency-related issue. In E.H., however, the concurrent jurisdiction order was in the record. E.H., 158 Wn. App. at 763 (referencing the concurrent jurisdiction order throughout the opinion).

In this case, while Abubakar may have benefitted from appointed counsel during the modification trial, there is no evidence in the record that the juvenile court granted concurrency or intended to use the modification trial for fact-finding in the dependency proceedings. Unfortunately there are no orders from the dependency court in the record. We cannot determine if the modification proceedings were inextricably linked to the dependency proceedings without an order. Because the order is not before us, our analysis necessarily ends.

## C.

Abubakar argues next that she had a constitutional right to counsel in the modification proceeding under Article I, § 3 of the Washington Constitution which declares: "No person shall be deprived of life, liberty, or property, without due process of law." Abubakar contends that she faced a "significant curtailment of her fundamental parenting rights." She claims that she was prejudiced because she could not "effectively navigate the proceedings on her own," especially when Hassan was represented by counsel.

In King v. King, 162 Wn.2d 378, 383-87, 174 P.3d 659 (2007), our Supreme Court held that the fundamental parental liberty interest in a proceeding for the termination of parental rights was not at stake in a proceeding that modifies a parenting plan. King addressed whether a parent's fundamental liberty interest was at stake in a dissolution proceeding where the dissolution action involved the entry of a parenting

plan. The court explained that proceedings allocating parental rights differ from proceedings terminating those rights. King, 162 Wn.2d at 386-87.

Abubakar fails to address King. Instead, Abubakar relies on In re Luscier's Welfare, 84 Wn.2d 135, 524 P.2d 906 (1974), and In re Myricks' Welfare, 85 Wn.2d 252, 533 P.2d 841 (1975), to support her constitutional argument. But King explained that In re Luscier's Welfare and In re Myricks' Welfare do not support the argument that a fundamental liberty interest is at stake in dissolution and modification proceedings. See King, 162 Wn.2d at 386-87.

Abubakar was appointed counsel in her dependency case because that case involved the potential termination of her parent-child relationship, a fundamental liberty interest protected by a statutory and a constitutional right to counsel. See RCW 13.34.090 (statutory right to counsel); King, 162 Wn.2d at 387 (constitutional right to counsel). But a modification proceeding differs from a dependency proceeding. See King, 162 Wn.2d at 383-87. Abubakar did not have a right to counsel during the modification trial. While unfortunate, this is a matter for the legislature to address.

II.

Abubakar also assigns error to the trial court's decision to modify the parenting plan and designating Hassan as the primary custodian.

Parenting plans, and orders modifying parenting plans, are reviewed for abuse of discretion. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Findings of fact are accepted as verities on appeal as

long as they are supported by substantial evidence. Chandola, 180 Wn.2d at 642. "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. Share, 106 Wn.2d 212, 220, 721 P.2d 918 (1986).

"Custodial changes are viewed as highly disruptive to children, and there is a strong presumption in favor of custodial continuity and against modification." In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Nonetheless, trial courts are given broad discretion in matters dealing with the welfare of children. McDole, 122 Wn.2d at 610. A trial court's findings will be upheld if they are supported by substantial evidence. McDole, 122 Wn.2d at 610.

A court may not modify a parenting plan unless it finds that (1) there has been a substantial change in the circumstances of the child or the nonmoving party; (2) the modification is in the best interests of the child; and (3) the modification is necessary to serve the best interest of the child. RCW 26.09.260(1). The court must retain the residential schedule established by the parenting plan unless "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c). Compliance with these criteria is mandatory, and failure by the trial court to make findings on each relevant factor is error. In re Marriage of Stern, 57 Wn. App. 707, 711, 789 P.2d 807 (1990).

Abubakar's appeal raises five arguments against the trial court's modification. We address and reject each argument in turn.

A.

Abubakar argues first that "the facts presented at trial do not support a major modification based on detriments under RCW 26.09.260[2](c)." The trial court found certain elements of Abubakar's home environment to be detrimental. Specifically, the court expressed concern about Abubakar's mental health, DSHS's founded neglect and physical abuse reports, and the social workers' testimony. These facts constituted substantial evidence from which a reasonable person could conclude that the children's present environment was detrimental to their physical, mental, or emotional health.

B.

Abubakar argues second that the detrimental environment at her home no longer existed at the time of trial. Hassan filed his petition to modify the original parenting plan in September 2014, but the trial began in February 2015. The last alleged finding of abuse or neglect was made in April 2014.[2] Abubakar relies on Ambrose v. Ambrose, 67 Wn. App. 103, 108-09, 834 P.2d 101 (1992), for the proposition that where "circumstances cause the time between the [hearing granting a temporary change of residence] and the [final hearing] to be lengthy, the need to look at the current circumstances of both parents is compelling." In Ambrose, Division Two of this court interpreted the phrase "child's present environment" in RCW 26.09.260(2)(c) to mean "the environment that the residential parent or custodian is currently providing or is capable of providing for the child." Ambrose, 67 Wn. App. at 108. This interpretation is helpful for situations where the temporary residence change and the final order are

---

[2] CP at 204. It appears that CPS temporarily removed the children from Abubakar's home at this time.

close in time. But as the Ambrose court explained, if the temporary change of residence order and the final order are far apart, then the trial court must consider the current circumstances of both parents. See Ambrose, 67 Wn. App. at 108-09.

Here, over nine months separated the temporary change of residence (April 2014) and the trial (February 2015). Under Ambrose, it was appropriate for the court to consider the circumstances of both Abubakar and Hassan's home environments. The trial court considered both parents' home environments. As stated in the final order:

> The father provides a safe and stable home that ensures the best interest of the children is met on a consistent basis. Additionally, it is significant that the father has been receptive to the family preservation services which have been provided. He has taken advantage of all of the in-home services which have been offered to the family. The mother has not been open to the same services and appears resistant to work with DSHS.[3]

## C.

Abubakar argues third that the change in circumstances was not substantial because the witnesses provided conflicting testimony about Abubakar's home. Credibility determinations, however, are for the trial court. Chandola, 180 Wn.2d at 650, n.5; Chatwood v. Chatwood, 44 Wn.2d 233, 240, 266 P.2d 782 (1954) (reasoning that a trial judge is in a better position than the appellate court to weigh evidence and credibility in a custody proceeding). The trial court "found the testimony of Brian Walton (DSHS Social Worker); Joan Freeman (Dependency GAL); and Saeed Hashemi (DSHS Social Worker) to be credible." Each of these witnesses testified about their experiences working with Abubakar and Hassan's family. And each of these witnesses recommended the modification.

---

[3] CP at 299. The trial court also found that Abubakar's "mental health deficiencies . . . interfere with her ability to safely parent these children."

D.

Abubakar argues fourth that the trial court's opinion on Abubakar's mental health was based on improper lay witnesses' opinions.

Washington Evidence Rule 701 limits the scope of a lay witness's testimony to those opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the testimony or fact in issue, and not based on scientific, technical, or other specialized knowledge. The trial court relied on testimony from DSHS social workers Walton and Hashemi and guardian ad litem Freeman. Walton testified that the file he reviewed referenced that Abubakar received a psychiatric evaluation in 2006; Hashemi and Freeman testified that they would recommend a psychiatric evaluation for Abubakar.

Although Abubakar denied ever submitting to or being hospitalized for a psychiatric exam, the court could infer that Abubakar's mental health may negatively impact her ability to parent her children. The trial court did not conclude outright that Abubakar has mental health issues. The court recognized that Abubakar's mental stability was uncertain: "It appears as though [Abubakar] may have some mental health deficiencies which interfere with her ability to safely parent these children." The court was within its discretion to conclude that Abubakar's mental health was detrimental to the children's physical, mental, or emotional health.

E.

Abubakar argues finally that the trial court modified the parenting plan without hearing evidence that the advantage of a change of environment outweighed the harm of a change of environment.

-12-

Walton testified that he "was in favor of them remaining [at Hassan's]." Hashemi also testified that "placing all children into [Abubakar's] care would basically seriously, seriously . . . compromise the well-being and stability of the children," their education, and their medical and emotional needs. This testimony directly addresses whether the advantage of a change of environment outweighs the change's harm. The trial court found this testimony to be credible.

The trial court's modification was supported by substantial evidence. The court acted within its discretion.

### III.

Abubakar also assigns error to the trial court's child support order. Abubakar fails, however, to argue this issue. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010). This issue is waived.

### IV.

Abubakar requested fees pursuant to RCW 26.09.140, RCW 26.09.260, and RAP 18.1. Because the motion to modify was not brought in bad faith, under RCW 26.09.260 and because Abubakar did not file a financial affidavit as required by RCW 26.09.140 and RAP 18.1(c), we deny her request for fees.

We affirm the trial court's final modification order and its final order of child support.

_____
Mann, J.

WE CONCUR:

_____          _____
Trickey, A.C.J.                          Leach, J.