IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39228-7-III |
| | ) | |
| MELONIE R. PANGERL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ADAM MICHAEL PANGERL, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Melonie Pangerl appeals after the trial court granted a major modification of the parenting plan for her two children with Adam Pangerl. Ms. Pangerl primarily challenges "all of the trial court's findings related to" (1) RCW 26.09.191 limiting factors imposed against her, (2) RCW 26.09.191 limiting factors removed from Mr. Pangerl, (3) conclusions that a substantial change of circumstances existed at the time of trial, and (4) the best interests of the children. Her arguments invite us to reweigh evidence weighed by the trial court. Because substantial evidence supports the challenged findings, we affirm.

No. 39228-7-III
*In re Marriage of Pangerl*

We additionally grant Mr. Pangerl's request for reasonable attorney fees incurred in the course of responding to a brief that failed repeatedly to cite to the record in its statement of the case.

FACTS

*Original parenting plan*

In 2017, Adam and Melonie Pangerl divorced and agreed to a parenting plan for their three-year-old daughter, B.P., and two-year-old son, M.P. The plan established Ms. Pangerl as the primary parent while awarding Mr. Pangerl biweekly visitation. The plan also imposed RCW 26.09.191 limitations against Mr. Pangerl, citing his "[p]hysical or a pattern of emotional abuse of a child" and "history of acts of domestic violence." Clerk's Papers (CP) at 2. The limitations imposed included:

- Counseling. Because Mr. Pangerl had a history of spanking and yelling at the children, the plan required him to participate in a parenting course through Vanessa Behan Crisis Nursery. Because Mr. Pangerl had verbally abused and possibly physically abused Ms. Pangerl during their marriage, the plan ordered him to continue treatment with his current therapist, which treatment should include therapy for domestic violence.

2

- <u>Disciplining methods</u>. Because Mr. Pangerl had admitted to spanking the children, the plan required him to refrain from corporal punishment.

- <u>Medical cooperation</u>. M.P.—the Pangerls' son—suffered from numerous ailments requiring frequent surgeries and treatments. Because Mr. Pangerl historically had resisted some of M.P.'s treatments, the parenting plan ordered Mr. Pangerl to comply with all medical advice related to M.P.'s health.

- <u>Firearm safety</u>. Because Mr. Pangerl had a history of firearm mishaps, the plan required him to store his guns safely while the children were in his care.

As of 2022, Mr. Pangerl had substantially completed or complied with all of the above parenting plan requirements.

*Abuse of B.P.*

In 2020, Ms. Pangerl and the Pangerl children moved in with James Walker, whom Ms. Pangerl had been dating for less than six months. Not long after, B.P.—the Pangerls' daughter—disclosed to her school counselor that she did not like Mr. Walker because he tickled her. M.P. also disclosed unwanted tickling. M.P. further disclosed that Mr. Walker "was mean to [the children], called them stupid, hit them[,] and spanked them."

Rep. of Proc. (RP) at 176. M.P. confirmed that Ms. Pangerl knew Mr. Walker spanked them. When M.P. told Ms. Pangerl he did not want to live with Mr. Walker anymore, Ms. Pangerl assured her son "it was going to be okay." RP at 177.

On March 7, 2021, B.P.—then eight years old—disclosed to Ms. Pangerl that Mr. Walker had touched her inappropriately. When Ms. Pangerl confronted Mr. Walker, he claimed the touching had happened inadvertently while roughhousing with B.P. Ms. Pangerl insisted Mr. Walker stop roughhousing with her daughter, but otherwise took no action.

On March 10, 2021, B.P. disclosed to her school counselor that Mr. Walker had repeatedly touched her inappropriately. The counselor reported the abuse, and on March 11, 2021, Child Protective Services (CPS) removed B.P. from Ms. Pangerl's care. One day later, CPS also removed M.P. from Ms. Pangerl's care.

On March 23, 2021, Mr. Pangerl filed a petition to modify the original parenting plan. The Pangerls stipulated to adequate cause, and the matter proceeded to trial. The Pangerls agreed the children would live with Mr. Pangerl pending resolution of the petition.

*Trial and modified plan*

After five days of testimony, the trial court agreed with Mr. Pangerl that a substantial change had occurred warranting parenting plan modification. The court established Mr. Pangerl as the primary parent while awarding Ms. Pangerl progressively increased visitation, subject to satisfactory conduct and therapeutic progress.

While the modified parenting plan imposed no RCW 26.09.191 limitations against Mr. Pangerl, the substance of his prior limitations survived into the modified plan. Where the original plan required Mr. Pangerl to store his firearms safely and follow the advice of M.P.'s doctors, the revised plan required Mr. Pangerl to store his firearms safely and cooperate on issues regarding the children's health. Where the original plan required Mr. Pangerl to continue treatment with his therapist at the time, the revised plan required him to continue treatment with his current therapist. Finally, where the original plan required Mr. Pangerl to participate in Vanessa Behan's parenting course, the modified plan required him to complete a Circle of Security parenting course.

The modified plan did impose RCW 26.09.191 limitations against Ms. Pangerl, however. The basis for these limitations was the abuse the Pangerl children suffered in Ms. Pangerl's home, along with Ms. Pangerl's failure to protect her children from that

abuse. The court further determined Ms. Pangerl suffered from a long-term emotional or physical problem that hindered her parenting.

Among other evidence, the trial court considered the following when reaching its conclusions:

- <u>Extensive testimony from Ms. Pangerl.</u> The court found Ms. Pangerl's testimony not credible, as "[s]he maintained an absolutist position even when there was contrary evidence." RP at 880. For example, Ms. Pangerl testified that Mr. Walker never was at home with her children without another adult present, but then admitted he was home in this manner with B.P. for two weeks during the pandemic. The court also noted Ms. Pangerl's tendency to insist other people were lying when evidence suggested otherwise, as when she refused to admit she had agreed to the children's placement with Mr. Pangerl despite the placement order bearing Ms. Pangerl's attorney's signature under the statement: "This order[ ] is an agreement of the parties." CP at 31.

    Ms. Pangerl also admitted in testimony that she had responded to news of Mr. Walker's abuse by (1) insisting a polygraph would prove his innocence, and (2) expressing concern that having an abuser in her home

6

would harm her professionally. Moreover, Ms. Pangerl testified that she did not perceive any red flags with respect to Mr. Walker, despite knowing that (1) her children were scared of him, (2) Mr. Walker inappropriately touched her children, and (3) Mr. Walker physically disciplined and even assaulted her children. Finally, Ms. Pangerl, despite everything that had happened, declined to accept any responsibility for what her children had endured.

- Extensive testimony from Mr. Pangerl. The court found Mr. Pangerl's testimony credible, as he acknowledged his own "weak or inconsistent positions" and spoke frankly about seeking therapy for empathy and control issues. RP at 880. Moreover, the court noted that Mr. Pangerl was "open and honest about his struggles to provide a nurturing environment" and "open to feedback and education." RP at 888.

- CPS social worker Michelle Woodward's testimony. Ms. Woodward testified that Ms. Pangerl, on hearing of the abuse her daughter suffered, immediately asked when CPS would be "doing a rape kit to show that her daughter was lying." RP at 772. Ms. Woodward's testimony was supported by contemporaneous notes.

- The Guardian ad Litem (GAL) report. The GAL concluded Ms. Pangerl had failed to protect her children from abuse.

- Ms. Pangerl's psychological and parenting assessments. Ms. Pangerl's psychological assessment concluded she is likely "acclaim seeking, arrogant, [and] vain" and hindered by "virtuous self-presentation" and "excessive self-importance." Ex. R-119, at 26-27. The assessment found that these "'narcissistic tendencies'" might cause Ms. Pangerl to "'think how a circumstance affects her first, before considering others.'" Ex. R-119, at 43. Similarly, Ms. Pangerl's parenting assessment found her to be "'[h]igh [r]isk' in the area of "parent-child role responsibilities" indicating she may tend to use children to meet her own needs, may perceive children as an object for adult gratification[,] and may expect her children to make her life better by providing love, assurance[,] and comfort." Ex. R-119, at 27.

On the basis of this and other evidence, the trial court determined that modifying the parenting plan served the Pangerl children's best interests. In addition to modifying

the plan, the court ordered Ms. Pangerl to pay monthly child support to Mr. Pangerl in the amount of $1,027.15.[1]

Ms. Pangerl timely appeals the trial court's orders and attendant findings.

ANALYSIS

RAP COMPLIANCE

Mr. Pangerl urges this court not to review Ms. Pangerl's arguments because her brief fails to identify specific findings of fact she seeks to challenge. Unlike most bench trials, however, domestic relations bench trials tend to have sparse findings of fact due to the use of standardized forms. We do not fault Ms. Pangerl's failure in this regard. Her issue statements in conjunction with her assignments of error adequately illuminate the substance of her appeal. *See* RAP 10.3(g) (authorizing appellate courts to review assignments of error disclosed in issue statements).

However, we do take issue with Ms. Pangerl's statement of the case. Under RAP 10.3(a)(5), briefs filed with this court must include a "fair statement of the facts and procedure relevant to the issues presented for review, without argument." Parties must substantiate their factual statements with references to the record. RAP 10.3(a)(5).

---

[1] We commend the trial court for its comprehensive and articulate oral ruling.

This court is not "required to search the record for applicable portions thereof in support of [a party's] arguments." *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966).

Here, Ms. Pangerl disregarded RAP 10.3(a)(5) by including a statement of the case in which more than 35 factual assertions are not substantiated by reference to the record. Although some of these assertions are trivial, many of them allege consequential facts meaningful to the resolution of the case. For example, Ms. Pangerl asserts all of the following without citation to the record:

- Mr. Pangerl acted pro se when proposing the original parenting plan. Br. of Appellant at 9-10.

- The original parenting plan included RCW 26.09.191 findings against Mr. Pangerl for abuse and a history of domestic violence. Br. of Appellant at 10.

- The original parenting plan named Ms. Pangerl as the primary parent while allowing Mr. Pangerl biweekly visitation. Br. of Appellant at 10.

- Ms. Pangerl denied telling a counselor about B.P. screaming and fleeing Mr. Walker. Br. of Appellant at 14-15.

- B.P. disclosed abuse to Ms. Pangerl while Ms. Pangerl gave her a bath. Br. of Appellant at 15.

- Mr. Walker denied abusing B.P.  Br. of Appellant at 15.

- Ms. Pangerl demanded Mr. Walker stop roughhousing with her children. Br. of Appellant at 15.

- CPS removed B.P. from Ms. Pangerl's home after a school counselor reported sexual abuse.  Br. of Appellant at 16.

- Mr. Pangerl and a social worker testified that Ms. Pangerl had agreed to the children's temporary placement in Mr. Pangerl's home.  Br. of Appellant at 16.

- Ms. Pangerl discovered child pornography on a flash dive belonging to Mr. Walker.  Br. of Appellant at 17.

- Ms. Pangerl reported the child pornography to her attorney and contacted law enforcement. Br. of Appellant at 17-18.  (Ms. Pangerl reiterates this assertion, without citation to the record, at Br. of Appellant at 32-33).

- The GAL contradicted Mr. Pangerl's testimony regarding the children's academic improvement while under his care.  Br. of Appellant at 21.

- At the time of trial, Ms. Pangerl remained in voluntary therapy.  Br. of Appellant at 25-26.

- M.P. disclosed spanking from Mr. Walker.  Br. of Appellant at 34.

- A therapist reported observing Ms. Pangerl set boundaries and "create[ ] quality time" with her children.  Br. of Appellant at 36.

- The GAL made a finding of abuse.  Br. of Appellant at 39.

- The GAL testified that "Mr. Pangerl should not have allowed his significant other to watch the children."  Br. of Appellant at 40.

Our own review of the record has allowed us, where needed, to confirm these assertions.  Accordingly, the deficiencies in Ms. Pangerl's statement of the case do not prevent us from reviewing the merits of her argument.  *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

Nevertheless, offering such assertions without substantiation both strains judicial resources, and—more importantly—increases Mr. Pangerl's legal costs by forcing opposing counsel to conduct an unnecessarily wide review of a voluminous record.  In sum, Ms. Pangerl's disregard for RAP 10.3(a)(5) is serious whether it is fatal to her appeal or not.

*Sanctions*

This court may impose RAP 10.7 sanctions against counsel who "neglect to meet the requirements of RAP 10.3."  *Litho Color, Inc. v. Pac. Emps. Ins. Co.*, 98 Wn. App.

286, 305, 991 P.2d 638 (1999). Provided that Mr. Pangerl complies with RAP 18.1, we authorize our commissioner to determine the appropriate attorney fee sanction.

SUBSTANTIAL EVIDENCE

Ms. Pangerl broadly challenges "[a]ll of the trial court's findings" in support of the forms of relief it granted. Opening Br. of Appellant at 3.

*Standard of review*

This court will not disturb a trial court's findings of fact where those findings derive from substantial evidence. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Evidence is substantial when it is "sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.* Because we defer to trial courts' credibility determinations, we will affirm any finding rooted in substantial evidence even if other evidence contradicts it. *In re Marriage of Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

*Substantial change in circumstances and best interests*

RCW 26.09.260(1) permits a trial court to modify an existing parenting plan only where "a substantial change has occurred in the circumstances of the child or the nonmoving party and . . . the modification is in the best interest[s] of the child[ren] and is necessary to serve the best interests of the child[ren]."

13

*i. Substantial change*

Here, Mr. Pangerl argued, and the trial court agreed, that a substantial change in circumstances occurred between the entry of the original orders and the modification trial. The record reveals ample evidence to support this and related findings by the trial court. Specifically:

- CPS social worker Michelle Woodward's testimony that Ms. Pangerl, on hearing of the abuse her daughter suffered, immediately asked when CPS would be "doing a rape kit to show that her daughter was lying." RP at 772.

  This statement suggests Ms. Pangerl reflexively discounted her daughter's abuse disclosures and instead credited the abuser's denials. Ms. Pangerl's deference to an abuser either had not arisen or was "unknown to the court at the time of the prior [parenting plan]," as no court would have knowingly awarded primary residential placement to a parent who protected an abuser at the expense of her child. RCW 26.09.260(1).

- Ms. Pangerl's admission that, on hearing of the abuse, she insisted a polygraph would prove Mr. Walker's innocence.

  Like the rape kit statement discussed above, this statement betrays Ms. Pangerl's reflexive assumption that B.P. was lying about the abuse Mr.

14

Walker inflicted on her. No court would have awarded primary custody to a parent exhibiting such assumptions. The assumption obviously implicates the welfare of the children.

- The psychological assessment concluding Ms. Pangerl is likely "acclaim seeking, arrogant, [and] vain" and hindered by "virtuous self-presentation" and "excessive self-importance." Ex. R-119, at 26-27. The assessment found that these "'narcissistic tendencies'" might cause Ms. Pangerl to "'think how a circumstance may affect her first, before considering others.'" Ex. R-119, at 43.

- Ms. Pangerl's admission that, on learning of the abuse, she expressed concern that having an abuser in her home would harm her professionally.

Ms. Pangerl's professional success benefits not only herself but her children. For this reason, the concern she expressed, standing alone, may not evince anything of concern. However, that Ms. Pangerl voiced this concern upon learning that her child had been abused corroborates the psychologist's finding that Ms. Pangerl may tend to "'think how a circumstance may affect her first, before considering others.'" Ex. R-119, at 43.

15

- The parenting assessment concluding Ms. Pangerl is "'[h]igh [r]isk' in the area of "parent-child role responsibilities" indicating she may tend to use children to meet her own needs, may perceive children as an object for adult gratification[,] and may expect her children to make her life better by providing love, assurance[,] and comfort." Ex. R-119, at 27.

- Ms. Pangerl's testimony that she did not perceive any red flags with respect to Mr. Walker, despite knowing that (1) her children were scared of Mr. Walker, (2) Mr. Walker inappropriately touched her children, and (3) Mr. Walker physically disciplined and even assaulted her children.

  Ms. Pangerl's failure to notice red flags when red flags proliferated suggests, as the GAL concluded, that Ms. Pangerl failed to protect her children from abuse.

  This failure constitutes a substantial change independent from—and in addition to—the abuse itself because it necessarily eroded the children's trust in their mother. Whatever parental relationship justified Ms. Pangerl receiving primary custody in 2017, that relationship had not yet sustained this crisis of trust. Moreover, Ms. Pangerl's failure to detect red flags increases the likelihood that she might again fail to detect those warning

signs in the future, with future partners. None of this, as a circumstance, was before the court in 2017 when the Pangerls entered their original parenting plan.

- Ms. Pangerl's inability to admit any fault. This failure further impairs Ms. Pangerl's relationship with her children because, by denying fault, Ms. Pangerl distances herself from the abuse her children suffered at the hands of someone she brought into their home. This failure enhances the risk that the children may come to see themselves as somehow responsible for the abuse—i.e., it was *their* responsibility to negotiate the threat Mr. Walker posed, not their mother's. The introduction of this risk itself constitutes a meaningful change in the Pangerls' familial circumstances.

Ms. Pangerl argued to the trial court, as she argues on appeal, that no "substantial change of circumstances" existed because Mr. Walker, at the time of trial, no longer had contact with her children. Ms. Pangerl's argument misses the point. Mr. Walker's presence in her household revealed a deficit in her ability to parent that was not known at the time the original parenting plan was entered. His presence revealed a troubling reluctance by Ms. Pangerl to place her children's safety above her own personal interests. That reluctance remains a parental deficiency even in the absence of Mr. Walker.

*ii. Best interests*

To grant a major modification of a parenting plan, a trial court must additionally find that the modification is in the children's best interest. RCW 26.09.260(1). Here, substantial evidence, as noted above, supports this determination.

*Residential modification*

A court modifying an existing parenting plan may also revise the residential schedule if, as one qualifying criteria, "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c). Where a court weighs residential modification long after the petitioner files his action, the court should consider the circumstances of both the moving and nonmoving parent. *In re Marriage of Ambrose*, 67 Wn. App. 103, 108-09, 834 P.2d 101 (1992).

Here, the trial court found Ms. Pangerl's home detrimental to B.P.'s and M.P.'s health on the basis of Ms. Pangerl's failure to protect the children from abuse. In light of Ms. Pangerl's discouraging psychological and parenting assessments, the court concluded that her failure in this regard presented an ongoing detriment, and not one confined merely to the interval when Mr. Walker was in the home.

Pursuant to *Ambrose*, the trial court also considered the environment Mr. Pangerl could offer at his home. Among other shortcomings, the court noted Mr. Pangerl's challenges with showing empathy, his anger issues, his acts of domestic violence, his erratic romantic history, and his track record of carelessness with firearms. However, the court also noted that Mr. Pangerl "acknowledges [his] mistakes and works towards fixing them." RP at 888. Moreover, the court noted that Mr. Pangerl was "open and honest about his struggles to provide a nurturing environment" and "open to feedback and education." RP at 888. The court found this to be in stark contrast with Ms. Pangerl, who "[would] not accept responsibility, and blames others." RP at 889. Accordingly, the trial court found that the advantages of altering the residential schedule in favor of Mr. Pangerl outweighed the risks.

In making this finding, the trial court properly relied on the substantial evidence described above in our "substantial change" analysis. RCW 26.09.260(2) does not require a court to identify a perfect parent before modifying residential placement. Instead, the court must weigh whether the advantages of modifying a residential schedule offset the disruptive harm. Because the trial court here both engaged in that analysis and relied on substantial evidence, it acted within its discretion.

*Child support*

Because Mr. Pangerl under the modified parenting plan assumed primary residential responsibilities, the trial court was justified in reassigning the child support burden to Ms. Pangerl. Ms. Pangerl's brief devotes only one conclusory sentence to this issue, despite raising it as an issue on appeal. Accordingly, we devote no further attention to this question.

RCW 26.09.191 LIMITATIONS

Ms. Pangerl argues the trial court should not have imposed RCW 26.09.191 limitations on her because she no longer resides with Mr. Walker. She also argues the trial court should not have lifted Mr. Pangerl's RCW 26.09.191 limitations because he failed to complete domestic violence perpetrator or anger management treatment. Because the RCW 26.09.191 limitations the trial court imposed on Ms. Pangerl did not hinge on her continued cohabitation with Mr. Walker, her argument here fails. Moreover, the trial court—to the extent it lifted Mr. Pangerl's limitations—acted within its discretion.

CONCLUSION

Substantial evidence supports the trial court's findings of fact, which in turn support the relief granted. Conditioned on Mr. Pangerl's compliance with RAP 18.1, we

No. 39228-7-III
*In re Marriage of Pangerl*

direct our commissioner to determine the appropriate sanction for Ms. Pangerl's multiple

failures to cite to the record in her statement of the case.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Pennell, J.                                              Cooney, J.

21